**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MIGUEL HERNANDEZ AGUILAR,                          :

                             Petitioner,    :

        -against-                                      :

THOMAS DECKER, *in his official capacity as Director* :
*of the New York Field Office of U.S. Immigrations &* :
*Customs Enforcement*; CHAD WOLF, *in his official* :
*capacity as Acting Secretary, U.S. Department of* :
*Homeland Security*; and WILLIAM BARR, *in his official* :
*capacity as Attorney General of the United States*, :

                         Respondents.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 2 7 2020

MEMORANDUM DECISION
AND ORDER

20 Civ. 4172 (GBD) (GWG)

GEORGE B. DANIELS, United States District Judge:

        Petitioner Miguel Hernandez Aguilar moves for a preliminary injunction and temporary restraining order ("TRO"), requiring Respondents to either (1) release him, subject to appropriate supervision conditions, or (2) provide him with a constitutionally adequate bond hearing in light of his prolonged detention "in unsafe and punitive conditions and without any judicial custody review in violation of the Fifth Amendment Due Process Clause." (Pet'r's Application for Order to Show Cause and Prelim. Inj. and TRO, ECF No. 5, at 1.)[1] Alternatively, Petitioner seeks relief under *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), and asks this Court to "order his release on reasonable conditions of supervision." (Mem. of Law in Supp. of Pet'r's Application for Order to Show Cause

---

[1] Petitioner also seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his prolonged detention by Immigration and Customs Enforcement ("ICE"). (*See* Verified Pet. for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Pet."), ECF No. 1.) In his Petition, Petitioner argues that Respondents violated his (1) substantive due process rights by failing to provide him with adequate protection from COVID-19, despite his heightened risk of contracting COVID-19 and suffering serious injury or death, and (2) procedural due process rights under 8 U.S.C. § 1226 by detaining him at Orange County Jail ("OCJ") in Goshen, New York since July 1, 2019 without a bond hearing. (*Id.* ¶¶ 66–84.)

("Mot. for PI and TRO"), ECF No. 5, at 1.)  Petitioner's motion for a preliminary injunction is GRANTED.  Within seven business days from the date of this Memorandum Decision and Order, Respondents shall provide an individualized bond hearing to Petitioner to determine whether his detention is justified, and within one business day thereafter shall advise this Court of the outcome of the bond hearing.

## I.   FACTUAL BACKGROUND

### A.  Criminal and Immigration History.

Petitioner is a 32-year-old man from Mexico who has lived in the United States since 2007. (Pet. ¶ 18.)   Since 2018, Petitioner has been arrested twice.   (*Id.* ¶ 19.)   Specifically, on February 7, 2018, Petitioner was arrested for, and later pleaded guilty to, attempted criminal possession of a controlled substance in the third degree, in violation of New York Penal Law ("NYPL") §§ 110-220.16(1).  (*Id.* ¶ 20.)  He was sentenced to a five-year term of probation.  (*Id.*) Subsequently, on June 20, 2019, while Petitioner was on probation, he was arrested and later arraigned on charges of criminal possession of a controlled substance in the third degree, in violation of NYPL § 220.16, and criminal possession of a controlled substance in the fifth degree, in violation of § 220.06.  (*Id.* ¶ 21.)  Shortly after Petitioner was released on bail, he appeared at his criminal court hearing on July 1, 2019.  (*Id.* ¶¶ 21–22.)  That same day, ICE arrested Petitioner and placed him in custody in OCJ for purposes of placing him in removal proceedings.  (*Id.* ¶ 22; Decl. of Deportation Officer Kevin King, Jr. ("King Decl."), ECF No. 19, at ¶ 8.)[2]  ICE served Petitioner with a Notice to Appear, which charged him as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without having been admitted or paroled, and referred him for removal proceedings at the Varick Street Immigration Court.  (Pet. ¶ 20; King Decl. ¶ 8; Return to

---

[2] On March 3, 2020, Petitioner pleaded guilty to NYPL §§ 110-220.16(1) and a violation of probation for his 2018 narcotics case.  (Pet. ¶ 22 n.1.)  He was sentenced to one year's imprisonment.  (King Decl. ¶ 7.)

Habeas Petition ("Return"), Ex. 2 (Notice to Appear), ECF No. 17-2.)  ICE ultimately determined that Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) pending removal proceedings.  (King Decl. ¶ 8; Pet. ¶ 1.)

On December 11, 2019, relying on Petitioner's 2018 drug conviction, the Immigration Judge denied Petitioner's applications for relief from removal and ordered him removed to Mexico. (King Decl. ¶ 16; Return, Ex. 4 (Signed Oral Decision of Immigration Judge), ECF No. 17-4.)  After a week, Petitioner filed a Notice of Appeal with the Board of Immigration Appeals ("BIA").  (King Decl. ¶ 16.)  On June 9, 2020, the BIA dismissed Petitioner's appeal of the Immigration Judge's decision, rendering his removal order administratively final.  (Id. ¶ 20; Return, Ex. 8 ("Decision of the Board of Immigration Appeals"), ECF No. 17-8.)  Accordingly, Respondents argue that Petitioner is now detained under 8 U.S.C. § 1231(a).  (King Decl. ¶ 20.)

Shortly thereafter, on June 17, 2020, Petitioner filed a Petition for Review ("PFR") of his removal order with the Second Circuit and filed a motion for a stay of removal on June 23, 2020. See Hernandez-Aguilar v. Barr, No. 20-1851 (2d Cir.).  By letter dated August 3, 2020, Petitioner informed this Court that on July 30, 2020, the Second Circuit issued a 90-day tolling order regarding his PFR so that Petitioner and Respondents can determine whether remand of the case to the BIA is warranted.  (Pet'r's Letter dated Aug. 3, 2020, ECF No. 31.)

As to Petitioner's detention, he remained in ICE custody from July 1, 2019 until he was turned over on a writ to the Westchester County Department of Public Safety on March 3, 2020. (King Decl. ¶ 9.)  On that day, Petitioner pleaded guilty to NYPL §§ 110-220.16(1) for his 2019 narcotics case and a violation of probation for his 2018 narcotics case.  (Id. ¶ 7; Pet. ¶ 22 n.1.)  He was sentenced to one year's imprisonment.  (King Decl. ¶ 7.)  On March 20, 2020, after serving his

sentence for his felony narcotics conviction, Petitioner was returned to ICE custody and transferred back to OCJ pending removal proceedings. (*Id.* ¶ 9; Pet. ¶ 22.)

**B. Medical and Living Conditions.**

Petitioner claims that he has a history of smoking[3] and a BMI of 32.4, which renders him obese (though at the lowest end of the relevant range). (Pet. ¶¶ 42, 46.) Petitioner further asserts that these conditions place him "at elevated risk of serious illness or death if infected with COVID-19." (*Id.* ¶ 42.) In support of his assertion, Petitioner has submitted, *inter alia*, a letter from a medical professional who previously reviewed his medical records. (*See* Mot. for PI and TRO, Ex. 1 (Letter from Dr. Hoai-nam), ECF No. 5-1.) In a May 27, 2020 letter, the medical professional noted that Petitioner's BMI was 32.4 as of his medical intake evaluation on March 20, 2020, "which is [considered] clinically obese" and that he is "a former smoker, averaging 1 pack per day since 2016 . . . prior to going into detention." (*Id.*) Moreover, she relayed her concern for Petitioner's health based on his medical history, "given his increased risk of becoming sick and of potentially developing severe complications if exposed to COVID-19." (*Id.*)

OCJ has not been immune to the ongoing COVID-19 pandemic. Petitioner contends that at least eight staff members have contracted the virus as of May 2020. (Pet. ¶ 48.) Petitioner further claims that social distancing is impossible or not enforced at OCJ as "[d]etainees comingle with each other and share common items, such as phones, a microwave, a television, a video headset to speak with attorneys, and shared tables and chairs at which detainees sit together less than 6 feet apart and play games." (*Id.* ¶ 49.) Petitioner also asserts that "detainees' temperatures are not regularly

---

[3] Respondents assert that "according to the OCJ's medical screening forms, [Petitioner] reported that *he was not a smoker* when he was initially admitted to OCJ on July 1, 2019, but later reported that he was a smoker when he was transferred back to OCJ on March 20, 2020, after the COVID-19 pandemic was underway." (Resp'ts' Mem. of Law in Opp'n to the Pet. for Writ of Habeas Corpus and Mot. for Prelim. Inj./TRO ("Mem. in Opp'n"), ECF No. 23, at 7.)

checked" and that "they are not provided with sufficient personal protective equipment and personal hygiene supplies to conform with CDC guidance." (*Id.* ¶ 50.) Petitioner further alleges that "[i]ntake of new criminal inmates has continued throughout the pandemic, and intake of new ICE detainees resumed on May 27, 2020." (*Id.*)

According to Respondents, Petitioner is housed in unit Alpha 2 where he is placed in his own individual cell. (Mem. in Opp'n at 8; Decl. of Supervisory Detention and Deportation Officer Flynn ("Flynn Decl."), ECF No. 21, at ¶ 25.) Respondents further claim that "[d]ayroom space allows for social distancing," "[d]etainees within Alpha 2 are evaluated by medical [personnel] upon observed or reported health issues," "[s]ymptomatic detainees are relocated to the Medical Unit, and that "[t]he staff in Alpha 2 wear masks." (Flynn Decl. ¶ 26.) Respondents further state that although "detainees do not wear masks within their cells, [they] wear masks while outside their cells." (*Id.*) Respondents assert that "[a]s of June 17, 2020, at 7:00 a.m., there were zero cases of confirmed COVID-19 at OCJ" and "no ICE detainees or county inmates at OCJ were symptomatic for COVID-19." (Mem. in Opp'n at 9.)

## II.   LEGAL STANDARD

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (per curiam) (citation omitted). To obtain a preliminary injunction, the moving party must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[4] *Winter v. Nat. Res. Def.*

---

[4] Petitioner asserts that a preliminary injunction is also appropriate where petitioner has demonstrated irreparable harm and "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." (Mot. for PI and TRO at 3 (cleaned up).) The Second Circuit has held that district courts may grant preliminary injunctions under the likelihood-of-success standard or the fair-ground-for-litigation standard. *See Wright v. Guiliani*, 230 F.3d 543, 547 (2d Cir. 2000). However, where "the moving party seeks a preliminary injunction

*Council, Inc.*, 555 U.S. 7, 20 (2008). Additionally, where the proposed injunction "will alter rather than maintain the status quo the movant must show clear or substantial likelihood of success." *Wright*, 230 F.3d at 547 (citation omitted). "The standard[s] for granting a [TRO] and a preliminary injunction pursuant to Rule 65 of the Federal Rules of [Civil] Procedure are identical." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002); *see also Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

### III.     PETITIONER HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS PROCEDURAL DUE PROCESS CLAIM

#### A. Petitioner's Procedural Due Process Claim is Not Moot.

As a preliminary matter, Respondents assert that the BIA's June 9, 2020 denial of Petitioner's appeal renders Petitioner's removal order administratively final. According to Respondents, Petitioner is now detained pursuant to 8 U.S.C. § 1231(a), instead of § 1226(c), (Mem. in Opp'n at 22–23; *see also* Decision of the Board of Immigration Appeals), and, therefore, Petitioner's procedural due process claim, challenging his pre-removal order of detention under § 1226(c), is moot, (Mem. in Opp'n at 23). In June 2020, Petitioner filed a PFR of his removal order along with a motion for a stay of removal, both of which are currently pending before the Second Circuit. *See Hernandez Aguilar v. Barr*, 20-1851 (2d Cir.).

§ 1231(a) applies only when detention is "imminent and certain," and "no substantive impediments remain to the immigrant's removal." *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir.

---

that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" *Id.* (citing *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999)). Here, Petitioner is mandatorily detained by ICE pursuant 8 U.S.C. § 1226(c), under which Congress explicitly granted authority to detain individuals pending removal proceedings. Accordingly, Petitioner must meet the likelihood-of-success standard for a preliminary injunction.

2018); *see also*, *Tireus v. Decker*, 17 Civ. 2348 (WHP), 2018 WL 896047, at \*7 (S.D.N.Y. Jan 31,

2018); *Heredia v. Shanahan*, 245 F. Supp. 3d 521, 523–25 (S.D.N.Y. 2017); *Argueta Anariba v.*

*Shanahan*, 190 F. Supp. 3d 344, 349–50 (S.D.N.Y. 2016). Here, because the Petition and the motion

to stay are currently pending, Petitioner's removal is stayed pursuant to the Second Circuit's

forbearance policy until that court decides his motion. *See In re Immigration Petitions for Review*

*Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012)). Indeed, the

Second Circuit's forbearance policy stands as a substantive impediment to Petitioner's removal until

that court issues a decision on his motion to stay. *See Rodriguez Sanchez v. Decker*, 431 F. Supp.

3d 310, 314 (S.D.N.Y. 2019) (holding that petitioner's "removal is neither imminent nor certain so

long as his petition for review is pending in the Second Circuit and the forbearance policy remains

in effect, his detention is governed by § 1226, not § 1231."). Accordingly, Petitioner's procedural

due process claim is not moot, because he is being detained pursuant to § 1226(c) and not § 1231(a).

## B. Petitioner's Procedural Due Process Claim Supports the Issuance of a Preliminary Injunction.

### i.   *Likelihood of Success on the Merits.*

Petitioner is likely to succeed on the merits of his claim that his mandatory detention pursuant

to 8 U.S.C. § 1226(c) is unreasonable and unconstitutional. "Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty

that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme

Court has held that "[i]t is well established that the Fifth Amendment entitles aliens to due process

of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has upheld the constitutionality of a short period of mandatory detention

under § 1226(c) without a bond hearing during the pendency of removal proceedings.

*See Demore v. Kim*, 538 U.S. 510 (2003). The Second Circuit, however, declined to extend

*Demore*'s holding to a non-citizen's indefinite detention pursuant to § 1226(c). Additionally, the Second Circuit has held that "[i]n order to avoid serious constitutional concerns, an implicit time limitation must be read into section 1226(c)" and that a non-citizen should "be afforded a bail hearing before an immigration judge within six months of his or her detention." *Lora v. Shanahan*, 804 F.3d 601, 614 (2d Cir. 2015), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018). Absent such a hearing, a non-citizen's detention pursuant to § 1226(c) "would violate his right to due process." *Id.* at 613.

Although the Supreme Court later rejected the Second Circuit's conclusion, finding that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes," *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018), the Court addressed the limitations of detention as a statutory matter. Indeed, the Court did not analyze any due process concerns, and even emphasized that "due process is flexible . . . and it calls for such procedural protections as the particular situation demands." *Id.* at 852 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Since *Jennings*, "[n]umerous courts in this Circuit have concluded that aliens subject to mandatory detention under 8 U.S.C. § 1226(c) 'are entitled to individualized determinations as to their risk of flight and dangerousness when their continued detention becomes unreasonable and unjustified.'" *Sophia v. Decker*, No. 19 Civ. 9599 (LGS), 2020 WL 764279, at *3 (S.D.N.Y. Feb. 14, 2020) (collecting cases). In determining whether a petitioner's detention is unreasonable or unjustified, thereby entitling him to a bond hearing, courts in this District perform a multi-factor test, as first articulated in *Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019). These factors include:

> (1) the length of time the alien has been detained; (2) whether the alien is responsible for the delay; (3) whether the alien has asserted defenses to removal; (4) whether the

alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.

*Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *10 (S.D.N.Y. Nov. 21, 2018). Here, the weight of these factors tilts in Petitioner's favor.

First, Petitioner has been detained for over a year, including the 210 days credited towards his criminal sentence, without a bond hearing pending his removal proceedings.[5] "As a rule of thumb, courts applying the multi-factor analysis have regarded detentions exceeding six months without a bond hearing as favoring the finding of a due process violation." *Graham v. Decker*, No. 20 Civ. 3168, 2020 WL 3317728, at *5 (S.D.N.Y. June 18, 2020). At a minimum, courts in this District have found that detention for over one year without a bond hearing violates due process. *See, e.g.*, *Rosemond v. Decker*, No. 19 Civ. 9657 (NSR) (LMS), 2020 WL 1876318, at *4 (S.D.N.Y. Apr. 14, 2020) (over a year); *Reid v. Decker*, No. 19 Civ. 8393 (KPF), 2020 WL 996604, at *9 (S.D.N.Y. Mar. 2, 2020) (same). Here, the length of Petitioner's detention—over a year without a bond hearing—substantially exceeds the six-month presumptively reasonable period. Accordingly, this factor weighs in favor of Petitioner.

---

[5] At oral argument, this Court inquired as to whether any portion of Petitioner's detention period pending his removal proceedings has been credited to the criminal sentence Petitioner received for his second felony narcotics conviction. In response, Respondents filed a letter, arguing that based a document titled "Computation of Sentence" prepared by the Westchester County Department of Correction, "210 days of the period during which the petitioner was detained pending his removal proceedings, from August 6, 2019, through March 2, 2020, were credited towards his criminal sentence." (Resp'ts' Letter dated July 1, 2020, ECF No. 29.) Petitioner claims that "the 210 days credited towards [his] criminal sentence should not be discounted from his period of immigration detention" and that "even if those days are discounted, his detention has still grown unreasonably prolonged in light of his 159 additional days [as of July 3, 2020] in ICE custody and the high likelihood of prospective detention." (Pet.'s Letter dated July 3, 2020, ECF No. 30.) Even if 210 days are discounted, Petitioner has spent over six months in immigration detention to date, a length of time that courts in this District have found to be sufficient to show a due process violation (as discussed above).

Second, Petitioner is not responsible for the delay in receiving a hearing.  Respondents argue that the length of Petitioner's detention is not due to any unreasonable delay caused by them, but rather "is attributable to actions taken by Petitioner and his counsel and the time it took to adjudicate the various forms of relief sought by Petitioner." (Mem. in Opp'n at 23.)  However, "pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged." *Hernandez v. Decker*, 18 Civ. 5026 (ALC), 2018 WL 3579108, at \*9 (S.D.N.Y. July 25, 2018). Petitioner has not caused any delay of his removal proceedings as he "has diligently challenged his deportation by promptly obtaining an attorney, filing his nonfrivolous applications for relief from removal in accordance with court deadlines, and timely appealing the immigration court's decision." (Mot. for PI and TRO at 10.)  It would be improper to hold these delays against Petitioner as they reflect his efforts to obtain relief from removal. *See Sophia*, 2020 WL 764279, at \*4 (holding that this factor weighs in the petitioner's favor where "[t]he record indicates that the length of his detention is primarily due to his efforts to ensure that he could proceed with legal counsel, his compliance with the Immigration Judge's schedule, and his decision to appeal the final decision concluding that the DHS had established removability.").  As such, this factor tips in Petitioner's favor.

The third, fourth, and fifth factors also weigh in favor of Petitioner.  Here, Petitioner is asserting defenses to his removal.  Particularly, Petitioner states that he "timely filed and pursued non-frivolous applications for relief from removal which are currently on appeal before the Board of Immigration Appeals." (Mot. for PI and TRO at 10.)  "The Court need not inquire into the strength of [a petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the [p]etitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the [p]etitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL

2357266, at *11. Thus, the third factor weighs in favor of Petitioner.  Petitioner was also sentenced to 364 days concurrent imprisonment for his 2018 and 2019 drug offenses, of which he was required to serve 225 days.  (Defs.' Letter dated July 1, 2020, Ex. 1 (Westchester County Dep't of Correction Computation of Sentence), ECF No. 29-1; Mot. for PI and TRO at 10–11.)  Even assuming, *arguendo*, that the 210 days Respondents allege were credited to Petitioner's criminal sentence were subtracted from the period of time Petitioner has been in detention at OCJ, because Petitioner's time in immigration custody will soon be roughly the same as Petitioner's sentence and Petitioner is currently detained at a penal institution, OCJ, the fourth and fifth factors weigh in favor of Petitioner. *See Rosemond v. Decker*, No. 19 Civ. 9657 (NSR) (LMS), 2020 WL 3965309, at *9 (S.D.N.Y. Apr. 1, 2020), *report and recommendation adopted*, No. 19 Civ. 9657 (NSR) (LMS), 2020 WL 1876318 (S.D.N.Y. Apr. 14, 2020) (finding that the fourth factor weighs in favor of the petitioner where the petitioner's time in immigration custody will soon exceed the length of his sentence in light of "the continuation of his removal proceedings on remand from the BIA (including any further appeals that might thereafter ensue) . . . .").

Considering these factors, Petitioner's continued detention without a bond hearing does not conform with the requirements of due process.  Accordingly, Petitioner has demonstrated a substantial likelihood of success on the merits of his petition, and is therefore entitled to an individualized bond hearing, as a form of relief.

ii.    *Irreparable Harm.*

Petitioner has made a showing that he will suffer irreparable harm absent a preliminary injunction.  Where, as here, the petitioner has asserted a constitutional violation, a presumption of irreparable harm attaches. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996).  "Several courts in this circuit have concluded that the deprivation of an alien's liberty is, in and of itself, irreparable harm." *Sajous*, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) (cleaned up).  Here, Petitioner

11

asserts that he is being deprived of liberty without due process of law by being detained without a bond hearing for over a year, or, alternatively, over six months when excluding the 210 days that were credited to his criminal sentence.   Additionally, Petitioner has demonstrated that he is substantially likely to succeed on the merits of his due process claim.   As such, Petitioner has made a showing that he will suffer irreparable harm unless an individualized bond hearing is granted.[6]

iii.     *Balance of Equities and Public Interest.*

Petitioner has demonstrated that the balance of equities and public interest weigh in his favor. "Where the Government is the opposing party, the final two factors in the temporary restraining order analysis—the balance of the equities and the public interest—merge." *Coronel v. Decker*, No. 20 Civ. 2472 (AJN), 2020 WL 1487274, at *7 (S.D.N.Y. Mar. 27, 2020) (citation omitted).   First, as explained above, Petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim.   Accordingly, the public interest is best served by ensuring that the constitutional right of Petitioner is protected.   *See Sajous*, 2018 WL 2357266, at *13 ("[P]ublic interest is best served by ensuring the constitutional rights of persons within the United States are upheld.").   Moreover, "[t]he Second Circuit has concluded that, where a [petitioner] alleges constitutional violations, the balance of hardships tips decidedly in the [petitioner]'s favor despite arguments that granting a preliminary injunction would cause financial or administrative burdens on the Government." *Id.* (citing *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984)).    Indeed,

---

[6] Because Petitioner has shown irreparable harm by establishing the risk of injury to his constitutional rights, this Court need not assess whether he has established the risk of injury to his health.   Moreover, Petitioner asserts that in the alternative, he is entitled to relief in the form of immediate release pursuant to *Mapp*. "[F]ederal courts have inherent authority to admit to bail individuals properly within their jurisdiction." *Mapp*, 241 F.3d at 226.   To succeed on a claim under *Mapp*, "[t]he petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id.* (second alteration in original) (quoting *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990)).   In light of the fact that the relief sought in the Petition is being granted, Petitioner has not established the existence of extraordinary circumstances that make the grant of bail necessary to make the habeas remedy effective. *See Lopez v. Sessions*, No. 18 Civ. 4198 (RWS), 2018 WL 2932726 (S.D.N.Y. June 12, 2018).

Respondents are unlikely to suffer any harm from the granting of the preliminary injunction, as a bond hearing will not unreasonably strain Respondents' resources nor will it undermine the enforcement of the U.S. immigration laws. "Such a hearing, of course, does not mean that the Petitioner will be released—it requires only that he be given a right to demonstrate that he is not a flight risk or danger and thus is entitled to be released on bond pending a determination of removability." *Id.* (citations omitted). Therefore, the balance of the equities and the public interest favor entry of a preliminary injunction.

### C. The Procedural Requirements of Petitioner's Bond Hearing.

For reasons stated above, Petitioner is entitled to a preliminary injunction instructing Respondents to provide him with an individualized bond hearing. At Petitioner's bond hearing, Respondents are required to demonstrate by "clear and convincing evidence" that Petitioner poses a risk of flight or a danger to the community. *See Graham*, 2020 WL 3317728, at *8 ("The overwhelming majority of courts have concluded, post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainees' fundamental liberty interests" (cleaned up).). The Immigration Judge must also consider Petitioner's ability to pay and alternatives to detention. "These two procedural safeguards—a clear and convincing standard of proof, and consideration of the ability to pay and conditions of release—are the two conditions most often ordered as constitutionally necessary." *Sophia*, 2020 WL 764279, at *5 (citation omitted).

### IV.    CONCLUSION

Petitioner's motion for a preliminary injunction, (ECF No. 8), is GRANTED. Within seven business days from the date of this Memorandum Decision and Order, Respondents shall provide an individualized bond hearing to Petitioner to determine whether his detention is justified, and within one business day thereafter shall advise this Court of the outcome of the bond hearing. The bond

hearing must include the above-described procedural safeguards.   Should Respondents fail to provide such a hearing, Respondents shall release Petitioner from detention within seven business days from the date of this Memorandum Decision and Order.

Dated: New York, New York
      August 27, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge